IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| PRASAD MARGABANDHU, RSP PITTSBURGH, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant, | ) | 2:26-CV-00496-MJH |

OPINION AND ORDER

Plaintiffs, Prasad Margabandhu, and RSP Pittsburgh, Inc., filed the within action for breach of contract (Count I) and statutory bad faith (Count II) against Defendant, State Farm Fire and Casualty Company, arising out State Farm's valuation of Plaintiffs' storm damage to their roof. (ECF No. 9). This Court granted State Farm's Motion to Dismiss on Plaintiffs' bad faith claim, but granted leave to amend. (ECF No. 8). Plaintiffs filed an Amended Complaint reasserting a bad faith claim. (ECF No. 9). State Farm again moved for partial dismissal under Fed. R. Civ. P. 12(b)(6). (ECF No. 11).

On July 22, 2026, the Court again granted State Farm's Motion to Dismiss, which dismissed Plaintiffs' bad faith claim, but granted leave until August 5, 2026 to amend. (ECF No. 17). Plaintiffs did not amend their Amended Complaint by said date, and State Farm filed its Answer on August 19, 2026. (ECF No. 18). On August 27, 2026, Plaintiffs moved for leave to file a Second Amended Complaint to assert class action allegations, amended bad faith allegations, and a claim for a violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL). (ECF No. 20). That matter is now ripe for decision.

Upon consideration of Plaintiffs' Motion for Leave to Amend (ECF No. 20), the respective briefs and documents (ECF Nos. 21, 25, 26, and 27), and for the following reasons, Plaintiffs' Motion will be denied.

I. Relevant Background

Plaintiffs assert that, on August 25, 2026, they learned through press reports that an Oklahoma court had released documents concerning State Farm's nationwide wind/hail claims handling program. Plaintiffs maintain that the materials publicly reported and released describe alleged companywide practices directed at reducing payments and full roof replacements; a "Wind/Hail Playbook"; claim-handler and management tactics; and expansion of the relevant practices to "all States" on December 17, 2020.

Plaintiffs now seek leave to file the proposed Second Amended Class Action Complaint. The proposed pleading alleges, upon information and belief, that State Farm implemented those Wind/Hail Claim Practices nationwide, including in Pennsylvania; that State Farm applied the practices to Plaintiffs' claim; and that the practices transformed State Farm's conduct from a bare valuation disagreement into an allegedly systematic, knowing, or reckless underpayment scheme. The proposed second amended complaint also adds proposed Rule 23 class allegations and a UTPCPL claim based on State Farm's "good neighbor" marketing and alleged concealment of the Wind/Hail Claim Practices.

II. Relevant Standard

A "court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny a motion for leave to amend is within the "sound discretion of the district court." *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). Absent "undue delay, bad faith, or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment," leave should be given. *Id.* Amendment is futile when the complaint as amended would not "withstand a renewed motion to dismiss." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (citation omitted).

III. Discussion

A. New Bad Faith Allegations

Plaintiffs propose to add new allegations of bad faith regarding State Farm's alleged broader corporate claim-handling program. Specifically, Plaintiffs assert that their proposed pleading responds to this Court's stated concern that the prior Count II lacked facts showing that State Farm's estimate was unreasonable rather than merely a difference in valuations. Plaintiffs' new allegations identify the alleged corporate practices, objectives, nationwide scope, expansion into Pennsylvania, and facts supporting the inference that such practices were applied to Plaintiffs' claim.

State Farm contends that Plaintiffs' proposed amendment is futile, because Plaintiffs cannot use press reports to support bad faith, the alleged practices are not unlawful, and the allegations fail to demonstrate the practices impacted Plaintiffs' specific insurance claim. State Farm also argues that Pennsylvania law does not support a bad faith claim based upon "institutional bad faith." State Farm further maintains that the proposed second amended complaint acknowledges, through allegations of "on information and belief" (ECF No. 20-1 at ¶¶ 42, 43), that Plaintiffs have no concrete facts to connect between State Farm's alleged Wind/Hail Claim Practices with Plaintiffs' specific insurance claim.

In response, Plaintiffs argue that their allegations are grounded in evidence developed and submitted in the Oklahoma litigation concerning State Farm's wind/hail claims practice, and that the allegations describe more than a generalized corporate interest in controlling expenses. Plaintiffs maintain that their proposed amendment does not allege merely that State Farm used national practices "to the world at large." Plaintiffs assert the practices plausibly explain why State Farm's valuation was not merely an isolated disagreement over claim value; rather, it was the product of procedures designed to constrain roof-replacement outcomes. Finally, Plaintiffs contend that, the issue of whether or not the Oklahoma evidence ultimately proves it was applied to Plaintiffs' claim, is a merits question.

Under Pennsylvania law, "there is no separate cause of action of institutional bad faith." *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 548 (Pa. Super. Ct. 2020). Rather, "Section 8371 . . . authorizes specified actions by the trial court 'if the court finds that the insurer has acted in bad faith toward the insured ...,' not to the world at large." *Id*. at 549 (emphasis added). *See also Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 114 (M.D. Pa. 2017) ("[T]he issue in a bad faith case is whether the insurer acted recklessly or with ill will towards the plaintiff in a particular case, not whether the defendants' business practices were generally reasonable").

Further, information-and-belief allegations expressly refrain from the most important of pleading foundations – knowledge – they are not entitled to the usual presumption of truthfulness that applies at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that "conclusions[ ] are not entitled to the assumption of truth"); *Santiago v. Warminster Township*, 629 F.3d 121, 132 (3d Cir. 2010). Information-and-belief statements may nonetheless be credited at the pleading stage if the other allegations in the complaint allow for the reasonable

inference of their truthfulness, which often includes a description of the basis for the information and belief.

Here, Plaintiffs' proposed amendments insufficiently plead a claim for bad faith under Section 8371. Plaintiffs attempt to use discovery from Oklahoma litigation does not, in and of itself, present a plausible bad faith claim that connects said discovery to Plaintiffs' insurance claims. Instead, Plaintiffs weakly plead a connection to their claims through "information and belief" statements which, under *Iqbal* pleading standards, are not entitled to the same deference and inference of truthfulness. Further, Plaintiffs' proposed amendment targets alleged general business practices related to roof damage; however, the business practices themselves do not address the valuation discrepancy alleged with Plaintiffs' claim. Finally, even with the proposed amendments, the Plaintiffs' averments still contain conclusory factual and legal statements that are speculative in nature and are based upon discovery from unrelated Oklahoma litigation. Therefore, on a futility of amendment standard, Plaintiffs' proposed second amended complaint fails to plead a claim for bad faith.

B. UTPCPL Claim

Next, Plaintiffs propose to add a claim under the UTPCPL based upon the following:

> 47. Before and during the sale and renewal of homeowners' insurance in Pennsylvania, State Farm widely advertised and marketed itself as a "good neighbor," including through its familiar representation, "Like a good neighbor, State Farm is there." State Farm used this message to convey that it would be present for, protect, and fairly treat its insureds when they suffered a covered loss.
>
> 48. State Farm's "good neighbor" marketing was material to consumers deciding whether to purchase or renew State Farm homeowners' insurance. Plaintiffs purchased and renewed the Policy for personal, family, or household purposes in reliance on State Farm's representations that it would stand by them and fairly provide the protection for which they paid premiums.
>
> 49. On information and belief, State Farm did not disclose to Plaintiffs or other Pennsylvania consumers, before they purchased or renewed their policies, that it

> had implemented a nationwide program of Wind/Hail Claim Practices intended to reduce first-party wind and hail claim payments and full roof replacements, including through undisclosed standards, management-review tactics, and training designed to limit or deny payments.
>
> 50. State Farm's advertising and marketing of itself as a "good neighbor," while concealing the Wind/Hail Claim Practices, had the capacity to deceive and did deceive Plaintiffs and other consumers into purchasing or renewing homeowners' policies they otherwise would not have purchased or renewed, or would have purchased or renewed only on materially different terms.
>
> 51. Plaintiffs and members of the UTPCPL Subclass suffered an ascertainable loss as a result of State Farm's deceptive conduct, including premiums paid for homeowners' coverage that was marketed as dependable protection but was subjected to undisclosed practices designed to restrict or reduce wind and hail claim payments.
>
> ***
>
> 63. The UTPCPL prohibits unfair methods of competition and unfair or deceptive acts or practices in trade or commerce. 73 P.S. § 201-3. An unfair or deceptive act or practice includes fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

(ECF No. 21 at p. 8).

State Farm argues that the "good neighbor" motto is inactionable puffery. State Farm also contends that the proposed second amended complaint does not provide a nexus that any alleged misrepresentation impacted Plaintiffs' purchasing decision. State Farm also maintains that the proposed second amended complaint does not adequately allege that Plaintiffs were damaged by any alleged factual misrepresentation; instead, State Farm asserts that Plaintiffs allege they were damaged by "payment-reduction" in the adjustment of their claim, which is not actionable under the UTPCPL.

*Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540 (Pa. Super. Ct. 2020) squarely addresses the UTPCPL's application in the insurance context. The UTPCPL "applies to the sale of an insurance policy, it does not apply to the handling of insurance claims." *Wenk*, 228 A.3d at

550 (emphasis and citation omitted). The UTPCPL governs how an insurer sells a policy, not how it handles a claim. The statute gives a private right of action to a person who suffers an ascertainable loss from an unlawful method, act, or practice. 73 P.S. § 201-9.2(a). Courts construe the UTPCPL liberally to serve its remedial purpose of preventing fraud and deception. *Commonwealth v. Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974). However, that purpose does not reach the handling of an insurance claim. *Wenk*, 228 A.3d at 550 (Pa. Super. Ct. 2020). A claim's character turns on its substance, not its label: conduct that amounts to claims handling does not become actionable under the UTPCPL merely because a complaint calls it a misrepresentation. *Holovich v. Progressive Specialty Ins. Co.*, 600 F. Supp. 3d 572, 584–85 (E.D. Pa. 2022). Even a plaintiff who alleges that the misrepresentation induced his purchase cannot state a claim under the UTPCPL when the substance of the dispute is claims handling.

*Holovich* provides instructive guidance. There, the insured was in a car accident: another driver struck his parked car, and his insurer paid to repair it but refused to pay for the resulting loss in the car's resale value. *Holovich*, 600 F. Supp. 3d at 576. He sued over that refusal, and among his claims he asserted a UTPCPL violation, alleging that the insurer had misrepresented his coverage and that the misrepresentation induced him to buy the policy. *Id.* at 585. Holovich ignored the label to examine the core of the claim—how the insurer handled his diminished-value claim, not any deception in the sale—and dismissed the UTPCPL claim. *Id.*

Here, Plaintiffs' claims center on claims handling and contract interpretation and not the sale of the insurance policy. Plaintiffs' claims relate to how State Farm valued Plaintiffs' alleged damages and how it applied its policy to its insured. Plaintiffs have not adequately pleaded any misrepresentation in the purchasing process other than that Plaintiffs did not receive the benefits

in the claims handling process that they expected. Further, Defense correctly identifies that any reference to "good neighbor" is inactionable puffery. Therefore, in this case, where the primary claims stem from claims handling valuation, a UTPCPL claim is not actionable, and any amendment is futile.

C. Class Allegations

Finally, the proposed second amended complaint seeks certification under Rule 23 of a Pennsylvania class of persons and entities that submitted first-party wind or hail claims to State Farm on or after December 17, 2020, when the alleged Wind/Hail practices were expanded to all states.

State Farm argues that Plaintiff cannot meet the Rule 23 standard because Mr. Margabandu, as someone with a fraud conviction, cannot adequately represent the class, State Farm's defenses are atypical to each claim, and that there are not sufficient common questions that predominate over Plaintiffs and the putative class claims.

Here, based upon the futility of the bad faith and UTPCPL claims above, only a breach of contract case remains. Plaintiffs' proposed class action breach of contract claim is based upon State Farm's alleged Wind/Hail practices. As the Court has discussed in its prior Opinions (ECF Nos. 8 and 17), the crux of this case is the valuation of Plaintiffs' claims and application of the State Farm policy. Whether State Farm applied a particular business practice in its valuation is irrelevant to whether it breached its contract with Plaintiffs. The valuation of damages, not State Farm's particular valuation methodology, will be determinative for the breach of contract claim. Therefore, the class allegations are impertinent to the circumstances of this particular breach of contract claim. Thus, amendment to add class action allegations are not necessary to support Plaintiffs' breach of contract claim, and said allegations are not appropriate in this case. There

exists no commonality to build a class action where the individual circumstances of Plaintiffs' alleged damage and State Farm's valuation of Plaintiffs' claim govern. Therefore, Plaintiffs' class action claim, vis-à-vis the breach of contract claim, fails, and any amendment would be futile.

IV. Conclusion and Order

Accordingly, for the reasons stated in this Opinion, Plaintiffs' Motion for Leave to Amend is denied. A separate order will follow rescheduling the initial case management conference.

DATED this 4th day of November, 2026.

BY THE COURT:

____________________________________
MARILYN J. HORAN
United States District Judge